IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ROSS J. LAWSON,

       Plaintiff,

v.                                     CASE NO. 4:04-cv-00105-MP-AK

JAMES MCDONOUGH,

       Defendant.

_____/

## O R D E R

      This matter is before the Court on Doc. 120, Report and Recommendation of the Magistrate Judge, recommending that Defendant's Motion to Dismiss, Doc. 51, be granted in part, and that several of Plaintiff's claims be dismissed for lack of standing or failure to exhaust. The Magistrate Judge filed the Report and Recommendation on Wednesday, December 27, 2006. The parties have been furnished a copy of the Report and have been afforded an opportunity to file objections.  Pursuant to Title 28, United States Code, Section 636(b)(1), this Court must make a *de novo* review of those portions to which an objection has been made.

      In his amended complaint, Doc. 42, Plaintiff seeks declaratory and prospective injunctive relief pursuant to 42 U.S.C. § 1983 for violation of the Religious Land Use and Institutionalized Persons Act of 2000, codified at 42 U.S.C. § 2000cc-1 *et seq*., and the Florida Religious Freedom Restoration Act of 1998, codified at Fla. Stat. § 761.01 *et seq*.  Plaintiff, an inmate at the Everglades Correctional Institution and an adherent of Orthodox Judaism, states that the policies and practices of the Department of Corrections are substantially burdening the exercise of his religion in violation of federal and state law.  Defendant has filed a Motion to Dismiss, Doc. 51, arguing that Plaintiff has failed to exhaust all available administrative remedies, and

lacks standing to challenge certain policies.  The Magistrate recommends granting Defendant's

Motion to Dismiss in part and denying it in part.  For the following reasons, the Court adopts the

Magistrate's Report in part and rejects it in part.

### A.  Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect

to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as

are available are exhausted."  42 U.S.C. §  1997e(a).  The phrase "as are available" does not give

the federal courts discretion to consider the adequacy or futility of the administrative remedies.

See Higginbottom v. Carter, 223 F.3d 1259 (11th Cir. 2000).  The requirement for a prisoner to

exhaust all available remedies is mandatory, even where the relief sought cannot be granted by

the administrative process.  See Booth v. Churner, 532 U.S. 731, 739, 121 S.Ct. 1819, 149

L.Ed.2d 958 (2001).  Moreover, the Supreme Court has held that the PLRA requires "[p]roper

exhaustion," which "demands compliance with an agency's deadlines and other critical

procedures."  Woodford v. Ngo, --- U.S. ---, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368, 74 USLW

4404 (2006).

The exhaustion doctrine provides "that no one is entitled to judicial relief for a supposed

or threatened injury until the prescribed administrative remedy has been exhausted."  Myers v.

Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 82 L.Ed. 638 (1938).

Requiring exhaustion allows an administrative agency to correct any mistakes in its own

programs prior to any court involvement, and promotes efficient resolution of claims without

resorting to the litigation process.  "The benefits of exhaustion can be realized only if the prison

grievance system is given a fair opportunity to consider the grievance." <u>Woodford,</u>126 S.Ct. at 2388.  To fully exhaust all available administrative remedies, an inmate must not only commence the grievance process, but also must perfect his appeal to the highest administrative level in the process.  <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1323 (11th Cir. 1998).  Under the administrative grievance program in Florida prisons, the grievance process is three-tiered: (1) an informal grievance; (2) a formal grievance to the warden; and (3) an appeal to the secretary.  <u>See</u> FLA. ADMIN. CODE CH. 33-103.

The Magistrate recommends granting Defendant's Motion to Dismiss for failure to exhaust on the following claims:

(1) denial of wearing religious clothing such as tallit, tzitzit, yarmulke;

(2) denial of the observation of the Sabbath each Friday;

(3) any aspects of sitting Onan other than the exception to grooming regulations; and

(4) observation of and supplies for "Sukkot."

Because Plaintiff did not appeal the denial of his grievances in these claims, or because Plaintiff's claims did not comply with grievance standards or provide adequate information about Plaintiff's complaints, the Magistrate states that Plaintiff has failed to exhaust administrative remedies as to these claims.  Plaintiff does not contest the Magistrate's finding regarding the failure to exhaust his claim about the denial of wearing religious clothing, but argues that the remaining claims were all properly exhausted.

<u>1.  Denial of the Observation of the Sabbath</u>

Although Plaintiff admits that he did not pursue the grievance cited in the Magistrate's Report through the full administrative process, he argues that he fully exhausted other grievances

concerning observance of Sabbath services.  The Magistrate based his recommendation on the grievance at Doc. 42, ex. E, which complained that the chapel was closed on a scheduled Jewish service, thus preventing Plaintiff from observing the Sabbath.  The grievances Plaintiff cites as fully exhausted are inapposite to this issue.  The grievances at Doc. 42, ex. L & R, seek redress for the denial of Shabbat/Havdalah supplies and participation in congregation services while Plaintiff was in confinement.  In these grievances, Plaintiff challenged the policies relating to inmates in disciplinary confinement; namely, that inmates are not allowed to be with the general population for religious events, or to possess religious service supplies that raise security concerns.  While these grievances are fully exhausted, they address materially different issues than the closure of the chapel.

Plaintiff also cites his grievance at Doc. 124, ex. 4, which complains of the failure to adequately accommodate the requirements for observance of the Sabbath.  In the grievance, Plaintiff states the manner in which the Sabbath services are conducted does not meet the strictures of Orthodox Judaism, and he requests several accommodations.  Again, this does not address the complaint that Plaintiff is being prevented from observing the Sabbath, but instead states that Defendant's policies are preventing Plaintiff from observing the Sabbath in the manner he wishes.  On this issue, the Magistrate found that Plaintiff had fully exhausted his administrative remedies.  However, it does not serve to exhaust the general claim that Plaintiff is being denied observation of the Sabbath each week.  Therefore, the Court agrees with the Magistrate that Plaintiff has failed to exhaust his claim on denial of the observation of the Sabbath each Friday.

<u>2.  Denial of the Ritual of Sitting Onan</u>

In the Report, the Magistrate finds that Plaintiff's grievances regarding sitting Onan did not provide enough information to adequately inform the Department of Corrections of the nature of Plaintiff's complaints, other than an exception for shaving and hair cuts.  Therefore, the Magistrate concludes that Plaintiff's claims regarding the other aspects of the ritual of sitting Onan should be dismissed for failure to exhaust.

According to Plaintiff, to sit Onan, "one is required to, among other things, rent his or her garment, refrain from praying or reading the Torah, avoid all levity, maintain certain dietary restrictions, and, to the extent possible, arrange for the relative's burial."  Doc. 42 at 12. Furthermore, during the mourning periods of Shiva and Shlosim, a person sitting Onan is prohibited from shaving or cutting their hair or beard.  In his informal grievance, Plaintiff complained that the only way he could observe the ritual of Onan would be to enter confinement. The response to this grievance stated that "'Onan' can not be observed from population."  In denying the appeal, the Secretary explained that the grooming standards of the Department of Corrections applied to all inmates not in confinement:

> You were never denied the right to be Onan, which includes not cutting one's hair or shaving, however you were told that if an inmate is not in confinement he is required to adhere to the grooming standards. Additionally, you did not provide the institution with all the relevant information of the laws concerning an Onan.

Doc. 1, ex. 2.  It is clear in the responses to Plaintiff's grievance that the only issued being denied was Plaintiff's request for a short refrain from shaving or hair cutting while among the general population.

In his objections, Plaintiff argues that the Department of Corrections did have enough information from his complaints regarding sitting Onan.  This argument is plainly refuted by the

Secretary's response that the institution did not have enough information concerning the laws of sitting Onan.  Plaintiff next argues that because his grievance was denied on the merits, this indicates that the Department of Corrections did have the necessary information.  The responses, however, show that Onan was understood to require Plaintiff simply to abstain from shaving and cutting his hair.  Thus, the Department of Corrections' ruling on the merits was limited to that issue, which the Magistrate has found to be fully exhausted.  Therefore, the Court agrees with the Magistrate that, with the exception of the challenge to the grooming standards, Plaintiff has failed to exhaust the denial of the other aspects of the ritual of sitting Onan.

### 3.  Denial of the Observation of, and Supplies for, "Sukkot"

The last allegation the Magistrate found not to be fully exhausted is Plaintiff's claim that he was denied the ability to observe the religious holiday of "Sukkot."  The Magistrate notes that Plaintiff's grievances concerning Sukkot were returned without action because they were deemed to be in non-compliance with the Department of Corrections' regulations for raising more than one issue.  Although Plaintiff was directed to re-file the grievances, he did not, and therefore the Magistrate concludes that Plaintiff failed to exhaust all available administrative remedies.

In his amended complaint, Plaintiff describes the observance of Sukkot to require, "among other things, dwell[ing], eat[ing], and recit[ing] prayers in a sukkah, a small open structure, preferably outside."  Doc. 42 at 23.  Plaintiff's grievance complained of the total denial of Sukkot supplies, specifically, the denial of "the ability to light candles; the use of 'sukkah' the use of 'lular and Etrog' and will most likely be denied 'hoshannas;' I've also been denied 'kiddush' and 'challah' and the wine to perform 'kiddush.' I have also been denied all other

aspects of this sacred holy day." Doc. 42, ex. O.  This grievance was returned without action since it was found to be in non-compliance with Inmate Grievance Procedures, FLA. ADMIN. CODE CH. 33-103, for raising more than one issue.

Plaintiff argues that this grievance addresses only one subject–the observance of Sukkot. The nature of the grievance shows that Plaintiff grieved the denial of supplies with which to observe Sukkot.  Each requested supply entails a different penological interest and security concern, and therefore the request for multiple supplies in one grievance necessarily involves more than one subject.  The Court does agree with Plaintiff that he has fully exhausted the denial of one supply–a sukkah.  In an exhibit recently discovered and not before the Magistrate, Doc. 123, ex. 7, Plaintiff proceeded through each stage of the grievance system, alleging that the denial of a sukkah prevented him from observing Sukkot.  The Department of Corrections found that the security concerns of allowing Plaintiff to set up a temporary structure in the prison took precedence over his right to practice his religion, and therefore denied Plaintiff's grievance. Accordingly, the Court finds that this aspect of the claim is properly exhausted and should go forward.  The Court agrees with the Magistrate that the remaining grounds, however, are not exhausted and should be dismissed.

## B.  Standing

Necessary for the issuance of injunctive relief is the requirement that a plaintiff have standing.  O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).  A plaintiff must present "specific, concrete facts" showing that the challenged conduct results in a "demonstrable, particularized injury" to the plaintiff, so that he will "personally benefit in a tangible way" from

any forth-coming court action.  Cone Corp. v. Florida Dep't of Transp., 921 F.2d 1190, 1203

(11th Cir.1991), (quoting Warth v. Seldin, 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343

(1975)).  It is well established that a plaintiff must show that any alleged injury is "actual or

imminent, not conjectural or hypothetical."  Adarand Constructors, Inc. v. Pena, 515 U.S. 200,

115 S.Ct. 2097, 2104, 132 L.Ed.2d 158 (1995); Church v. City of Huntsville, 30 F.3d 1332, 1337

(11th Cir.1994).  Plaintiff must show "a sufficient likelihood that he will again be wronged in a

similar way." Lyons, 461 U.S. at 111, 103 S.Ct. at 1670.

    In the Report, the Magistrate recommends that Plaintiff's claims for denial of Passover

services and supplies in April 2003, denial of use of religious reading materials in April 2003,

and denial of use of tefillin in April 2003, be dismissed for lack of standing.  Further, the

Magistrate recommends that Plaintiff's claim of denial of Kosher meals be denied as moot, since

the Defendant has subsequently enacted the Jewish Dietary Accommodation Program ("JDAP"),

and that any claims against the JDAP be denied as not exhausted and for lack of standing.

        1.  Denial of Kosher Meals and the Jewish Dietary Accommodation Program

    The Magistrate concluded that although Plaintiff has exhausted his claim for Kosher

meals, this claim was moot as a result of the Department of Corrections' subsequent

implementation of the JDAP.  The Magistrate seemed to base this finding of mootness on the

fact that the JDAP "now provides kosher meals in certain correctional institutions."  Doc. 120 at

26.  Also, because Plaintiff has not exhausted his claims as to the adequacy of the JDAP, and

because Plaintiff has elected not to participate in the JDAP, thus lacking standing to challenge it,

the Magistrate recommends that this claim be dismissed.

    Plaintiff does not challenge the Magistrate's finding about the JDAP except to the extent

that it qualifies as a Kosher meal plan.  In his objections, Plaintiff argues that his properly

exhausted claim of denial of Kosher meals is not moot because the JDAP does not provide

Kosher food to inmates.  Rather, the JDAP provides Jewish meals that have not been Koshered

to inmates.  Therefore, Plaintiff argues that he has standing to bring his claim for Kosher meals

irrespective of his participation in the JDAP.  The Court agrees with Plaintiff.  The specific relief

sought by Plaintiff is to receive "pre-packaged Kosher meals at DOC cost . . . separate and apart

from the JDAP."  Doc. 42 at 12.  In his grievances, Plaintiff states that he is being denied the

right to Kosher meals.  As Plaintiff points out, the Department of Corrections does not claim that

the JDAP meet the requirements of Kosher food.  See Doc. 123, ex. 8.  Instead, the JDAP is an

attempt to provide Jewish inmates with dietary restrictions with a better alternative than vegan or

vegetarian meal plans.  Therefore, the implementation by the Department of Corrections of the

JDAP cannot make Plaintiff's claim moot, since Plaintiff is still being denied Kosher meals.

Plaintiff, however, has not challenged the adequacy of the JDAP, and thus not has not exhausted

his administrative remedies on this issue.  Accordingly, the Magistrate's Report is rejected to the

extent that it finds Plaintiff's claim for denial of Kosher meals is moot.

### 2.  Denial of Passover Services and Supplies

During Passover in April 2003, Plaintiff was placed in confinement and was denied

Passover services as well as supplies.  Under the policies of the Department of Corrections,

when an inmate is in disciplinary confinement, he is denied services and items in his cell.  In the

Report, the Magistrate found that because Plaintiff did not face a real and immediate threat of

future injury, he lacked standing to challenge this denial.  Specifically, the Magistrate found that

Plaintiff would have to be in close confinement during Passover again before any relief sought

could be effectively granted, and that it is within Plaintiff's power whether he is placed in disciplinary confinement during Passover.

Plaintiff states that because he is serving a life sentence, and because he has been placed in disciplinary confinement numerous times, the threatened injury is not speculative or hypothetical, but real.  "Courts have been unwilling to assume, for the purpose of establishing standing, that the party will engage in unlawful behavior in the future."  Williams v. Wilkinson, 132 F.Supp.2d 601, 606 (S.D.Ohio 2001).  In order for Plaintiff to be placed in disciplinary confinement again, he would have to have been found guilty of violating the law of the prison. See FLA. ADMIN. CODE CH. 33-602.222(1)(f).  Therefore, because the Court presumes that Plaintiff will not break the law of the prison, the Court agrees with the Magistrate that Plaintiff does not face a real and immediate threat of future injury, and thus lacks standing to challenge the denial of Passover services and supplies while in confinement.

### 3.  Denial of use of Religious Reading Materials

During the same time that Plaintiff claims that he was denied Passover services and supplies, he states that he was denied hardbound religious books while in close confinement, pursuant to Florida Administrative Code §33-501.401(18).  Defendant, in the Motion to Dismiss, states that this was an isolated incident that occurred at Madison Correctional Institute, and Plaintiff has not demonstrated that he has been denied religious reading materials since leaving Madison.  Because Plaintiff asserts that he has had no problems retaining his religious texts since this time, the Magistrate contends that the likelihood of the event ever occurring again is remote and speculative, and that Plaintiff therefore lacks standing to assert a claim for prospective relief.

In his objections, Plaintiff states that it is Defendant's policy to prohibit hardcover books

in confinement, and because it is likely that Plaintiff will be placed in confinement again at some

point during the remainder of his life sentence, it is therefore likely that he will be denied access

to hard cover books.  The explicit policy of the Department of Corrections is to prohibit

hardbound books only to death row inmates and inmates under close management status.  The

Florida Administrative Code does not address whether inmates in administrative confinement are

allowed to possess hardcover books, and the decision whether to allow these books in

administrative confinement appears to be delegated to the individual institutions.  As the

Magistrate points out, Plaintiff has been denied a hardcover book only once while in

confinement, and this occurred at a different correctional institution than the one where Plaintiff

is presently incarcerated.  To find that Plaintiff has standing to challenge an unwritten policy that

has not been enforced against him at his current institution would require stringing together a

chain of hypothetical events.  This is what the standing doctrine was designed to prevent.

Therefore, the Court agrees with the Magistrate that Plaintiff lacks standing to challenge the

denial hardbound religious books while he was in confinement.

### 4.  Denial of Use of Tefillin

Plaintiff also alleges that while in confinement at Madison Correctional Institute, he was

not allowed to keep tefillin in his cell, or to go to the chapel to use his tefillin.  Tefillin are used

in traditional morning prayer services in Orthodox Judaism, and consist of two boxes containing

Biblical verses, which are attached to the arm and head with leather straps.  Because Plaintiff

was only denied use of his tefillin once while at Madison Correctional Institute, and has since

never had a problem in using tefillin in any other institution or at any other time during his

incarceration, the Magistrate recommends that Plaintiff lacks standing to assert this claim for

prospective injunctive relief.

Plaintiff objects to the Magistrate's recommendation, arguing that because he will at some point be placed in confinement, Defendant's policy to deny inmates in confinement access to tefillin demonstrates a real and immediate threat of future injury.  As the Magistrate states, the Florida Administrative Code does not directly address this issue, and each institution decides whether inmates are allowed to keep tefillin in their cells or are required to use tefillin in the chapel.  Plaintiff admits that other institutions where he has been in custody, as well as correctional institutions other than Madison, make arrangements for Jewish inmates to use tefillin even when in confinement.  Plaintiff further admits that since his transfer from Madison, he has not had a problem using tefillin.  The substance of Plaintiff's claim is denial of daily use of tefillin each morning, and Plaintiff cannot show that he is facing a real or immediate threat of future injury because he is not being denied the use of tefillin.  For Plaintiff to suffer an injury, he would have to be in confinement, denied possession of tefillin while in confinement, and also denied the ability to use tefillin in a suitable location, such as the chapel.  This is too speculative to allege an actual injury, and therefore the Court agrees with the Magistrate that Plaintiff lacks standing to assert this claim.

Therefore, having considered the Report and Recommendation, I have determined that it should be adopted in part and rejected in part.  Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.    The Magistrate Judge's Report and Recommendation, Doc. 120, is adopted and incorporated by reference in this order, except as otherwise noted.

2.    The Magistrate's Report is rejected to the extent that it finds Plaintiff's claim for denial of a sukkah for observing the holiday of Sukkot was not fully exhausted.

3.      The Magistrate's Report is rejected to the extent that it finds Plaintiff's claim for denial of kosher meals moot.

4.      This matter is referred back to the Magistrate.

**DONE AND ORDERED** this   *16th* day of May, 2007

_____*s/Maurice M. Paul*_____
Maurice M. Paul, Senior District Judge