IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ROSS J. LAWSON,

      Plaintiff,

v.                                  CASE NO. 4:04-cv-00105-MP-GRJ

DEPARTMENT OF
CORRECTIONS, et al.,

      Defendants.

_____/

## REPORT & RECOMMENDATION

Pending before the Court are two motions, filed by Plaintiff, Ross Jay Lawson ("Lawson"): (1) Plaintiff Ross Jay Lawson's Emergency Motion for Preliminary Injunction, ECF No. 285 and (2) Plaintiff Ross Jay Lawson's Emergency Motion for Preliminary Injunction And Request for Expedited Relief. ECF No. 291. The Defendant, Florida Department of Corrections ("FDOC") has filed responses in opposition. ECF Nos. 296 and 308.  With the Court's permission Lawson filed a reply in support of his motion for preliminary injunction. ECF No. 335. The matter is, therefore, ripe for review.

## I. Introduction and Background

Because this case has such a long and tortured history the Court will summarize the proceedings thus far before addressing the substance of Lawson's motions.

The operative complaint is Lawson's Amended Verified Complaint for Declaratory and Injunctive Relief. ECF No. 42. In the amended complaint Lawson seeks preliminary and permanent injunctions against the FDOC based upon his claims that FDOC policies are burdening his religious practices of Orthodox Judaism in violation of

the Religious Land Use and Institutionalized Person Act ("RLUIPA").  Specifically,

Plaintiff seeks a declaration from the Court that his rights have been violated and an

injunction enjoining the FDOC from further denying Plaintiff the right to:

> (i) keep a Kosher diet according to the Laws of Kashruth that meets the Recommended Dietary Allowances or the Dietary Reference Intakes of the Food and Nutrition Board of the National Academy of Sciences;
>
> (ii) observe and study daily the reading of the Torah, Tanach, Talmud and other Jewish Holy Books;
>
> (iii) utilize religious clothing daily, including a tallit (prayer shawl), tzitzit (four-cornered, tassled jersey) and yarmulke (head garment);
>
> (iv) observe Shacharis with tefillin each morning, preferably in the chapel, and with a minion if possible;
>
> (v) observe Mincha each afternoon, preferably in the chapel, and with a minion if possible;
>
> (vi) observe Maariv each evening, preferably in the chapel, and with a minion if possible;
>
> (vii) observe the Sabbath each Friday night after dark, preferably in the chapel, and with a minion if possible;
>
> (viii) observe Havdalah each Saturday night after dark, preferably in the chapel, and with a minion if possible;
>
> (ix) observe all Jewish Holidays, including, without limitation, Passover, Sukkot, Rosh Hashanah, Yom Kippur, Simchat Torah and Shemini Atzeret;
>
> (x) refrain from shaving or cutting his hair and beard during Shiva, Shlosim and the Counting of Omer;
>
> (xi) sit Onen upon the loss of certain close relatives;
>
> (xii) observe Jewish services in a non-denominational room; and
>
> (xiii) consistently and timely consult the counsel of an Orthodox rabbi;
>
> ECF No. 42 at 32-33.

2

Defendant successfully obtained dismissal as to several of Plaintiff's claims. Accordingly, the only claims that remain pending are Lawson's requests that the Court enjoin the FDOC from further denying Plaintiff the right to:

(1) keep a certified Kosher Diet;

(2) utilize a Sukkah during the Sukkot holidays;

(3) observe Shacharis each morning;

(4) observe Mincha each afternoon;

(5) observe Havdalah each Saturday;

(6) observe Rosh Hashanah, Yom Kippur, Simchat Torah, and Shemini Atzeret;

(7) refrain from shaving during the Counting of Omer and the Sitting of Onan;

(8) worship or conduct Jewish services in a non-denominational room; and

(9) consistently and timely consult with an Orthodox Rabbi.

This Court previously (before the undersigned was assigned to this case) dismissed the entire action as frivolous under the Prison Litigation Reform Act ("PLRA"). ECF No. 201. The Eleventh Circuit Court of Appeals then reversed and remanded. *Lawson v. Sec'y, FDOC*, 454 F. App'x 706 (11th Cir. 2011). On remand, this Court again dismissed the action, this time pursuant to Rule 11(c) of the Fed. R. Civ. P., as a sanction. ECF No. 245. Lawson appealed the dismissal, and the Eleventh Circuit again reversed and remanded. *Lawson v. Sec'y, FDOC*, 563 F. App'x 678 (11th Cir. 2014).

**The FDOC Kosher Diet Programs**

Prior to 2004, the FDOC did not provide kosher meals to any prisoners. In 2004,

the FDOC initiated the Jewish Diet Accommodation Program ("JDAP") in thirteen FDOC facilities.  The program offered kosher meals to eligible prisoners.  In 2007, the program was terminated, and prisoners at all FDOC facilities did not have access to kosher meals.

In 2010, the FDOC instituted a pilot kosher program at South Florida Reception Center.  In 2013, the FDOC established the Religious Diet Program (RDP), which included a kosher option.[1]  The RDP was initially established at one FDOC facility, and has since been extended to a number of additional institutions.

***The Department of Justice Action Against the FDOC***

During the pendency of this case, a parallel suit was initiated in 2012 in the United States District Court for the Southern District of Florida, by the United States Department of Justice ("DOJ") against the FDOC, in which the the DOJ on behalf of inmates in the custody of the FDOC sought an injunction under RLUIPA requiring the FDOC to provide a kosher diet to prisoners. *U.S. v Secretary*, Case No. 12-22958-CIV-SEITZ (S.D. Fla. 2012). ("*U.S. v Secretary*"). The FDOC maintained that it was not obligated to provide kosher meals under RLUIPA, however, it intended to do so—as evidenced in part by several FDOC programs, which periodically provided kosher meals to prisoners since 2004.

In December 2013, the district judge in *U.S. v Secretary* entered a preliminary

---

[1]Certified Food Option ("CFO") was the name for the newly established kosher food option.  The CFO originally consisted of two hot meals a day made up of prepackaged processed foods.  CFO was modified in approximately 2014 and now consists of combinations of peanut butter, bread, sardines, beans, carrots, cabbage, cereal, crackers and whole fruit.

injunction, mandating the FDOC to provide a kosher diet to prisoners.  *U.S. v. Sec'y, FDOC*, Case No. 12-22958-CIV, 2013 WL 6697786 (S.D. Fla. Feb. Dec. 6, 2013).  The Eleventh Circuit vacated the injunction in February 2015, finding that the court had failed to make specific evidentiary findings in support of its ruling as required by the PLRA.  *U.S. v. Sec'y, FDOC*, 778 F.3d 1223 (11th Cir. 2015).

Proceedings then resumed at the district court level.  The parties there agreed that the total cost of providing a kosher diet state-wide through the RDP would be between $384,000 and $12,300,000 per year.  *U.S. v. Sec'y, FDOC*, Case No. 12-22958-CIV, 2015 WL 1977795, at *4 (S.D. Fla. Apr. 30, 2015).  Several high-ranking FDOC officials testified to the sustainability of the RDP.  The designated FDOC security expert testified that the RDP was consistent with the department's security interests.  *Id.* at *5.

At summary judgment, the court entered an injunction mandating that the FDOC provide kosher meals to prisoners with sincere religious beliefs requiring kosher meals.  *Id.* at 11.  Applying RLUIPA to the denial of kosher meals, the court there noted that the parties agreed that a "blanket denial of kosher meals imposes a substantial burden on prisoners' religious exercise for those with a sincere religious belief requiring them to keep kosher."  *Id.* at *7.

Accordingly, the court in *U.S. v Secretary* found that the burden shifted to the FDOC to establish that the blanket denial was the least restrictive means of furthering a compelling state interest to comport with RLUIPA.  The FDOC argued that the state had a compelling interest in cost containment and the blanket denial of a kosher diet was

the least restrictive means of furthering it.

The district judge rejected the FDOC's argument that the state had a compelling interest in containing the particular costs related to providing kosher meals, citing three factors:

> (1) [The FDOC was] already providing kosher meals and incurring the associated costs; (2) [the FDOC had] not shown that the Florida prison system is different from the majority of state prison systems and the Federal Bureau of Prisons, which are all able to offer kosher meals to prisoners; and (3) [the FDOC had] not demonstrated that avoiding these costs actually furthers a compelling state interest.

> *Id.* at *8.

Moreover, the court there held that even if the FDOC had established cost containment as a compelling state interest, it had not established with substantial evidence that a blanket denial of kosher meals is the least restrictive means of achieving that goal.

Consequently, on August 12, 2015 pursuant to the court's order on summary judgment the court in *U.S. v Secretary* entered a Final Judgment and Permanent Injunction. (*U.S. v Secretary*, ECF No. 548.)  In the Final Judgment and Permanent Injunction the court, *inter alia,* entered judgment in favor of the DOJ and against the FDOC on the claim challenging the FDOC's denial of a kosher diet to sincere prisoners. The Court declared that the FDOC's policy of denying a kosher diet to sincere prisoners violates RLUIPA. The court entered a permanent injunction that ordered the FDOC to offer a kosher diet to all prisoners in the FDOC with a sincere religious belief for keeping kosher. The Court also initiated policies and procedures for preparing and serving kosher meals, and to monitor compliance, the court set up monthly and

quarterly reporting procedures to ensure that the FDOC was complying with the Court's permanent injunction. Accordingly, since at least August 2015 (if not before) Lawson is being offered Kosher meals consistent with the procedures outlined in Judge Seitz's permanent injunction.

The FDOC has appealed the decision in *U.S. v Secretary*, which currently is being briefed in the Eleventh Circuit. No order has been entered staying the final judgment and permanent injunction.

## II.  RLUIPA Standard

Institutionalized persons in programs receiving federal funds are afforded the protections set out in RLUIPA.  42 U.S.C. § 2000cc-1.  RLUIPA mandates that government may not impose a substantial burden on a person's religious exercise, "even if the burden results from a rule of general applicability," unless it shows that the policy creating the burden is the least restrictive means of furthering a compelling governmental interest.  42 U.S.C. § 2000cc(a)(1).  Government action "must be more than incidental and must place more than an inconvenience on religious exercise" to constitute a substantial burden.  *Smith v. Allen*, 502 F.3d 1255, 1277 (11th Cir. 2007) (internal quotations omitted) abrogated on other grounds by *Sossamon v. Texas*, 131 S.Ct. 1651 (2011).  A policy that requires prisoners to "engage in conduct that seriously violates [their] religious beliefs" constitutes a substantial burden on religious exercise. *Holt v. Hobbs*, 574 U.S. __, 135 S.Ct. 853, 862 (2015).

The spectrum of "religious exercise" protected under RLUIPA is defined expansively in the law as: "any exercise of religion, whether or not compelled by, or

central to, a system of religious belief." § 2000cc-5(7)(A).  Congress also stated that

the government may be required to "incur expenses in its own operations to avoid

imposing a substantial burden on religious exercise." § 2000cc-3(c).

The initial burden is on the plaintiff to establish that a policy imposes a

substantial burden on a prisoner's religious exercise.  *Holt*, 135 S.Ct. at 862.  If the

plaintiff meets this requirement, the burden then shifts to the defendant to establish that

the challenged policy "(1) was in furtherance of a compelling governmental interest; and

(2) was the least restrictive means of furthering that compelling governmental interest."

§ 2000cc-1(a); *Holt*, 135 S.Ct. at 862.

### III.  Discussion

Plaintiff seeks to preliminarily enjoin the FDOC from burdening his religious

exercise relating to kosher meals, Sukkot, Rosh Hashana, Yom Kippur, Shemini

Atzeret, and Simchat Torah.[2] ECF Nos 285 and 291. The Court will address each of

these claims separately.

### A.  Denial of a Kosher Diet

Before addressing Plaintiff's claim that he is being denied a Kosher diet in

violation of RLUIPA the Court must resolve two threshold issues that arise as a result of

the entry of the final judgment and permanent injunction by the Court in *U.S. v*

*Secretary*.  First, assuming that the FDOC is providing Lawson with Kosher meals as a

---

[2] Although Plaintiff raises other claims in his amended complaint that were
properly exhausted and remain pending, he does not seek preliminary injunctions for
them in his pleadings, so this Court will not address these residual claims.  ECF Nos.
285; 291; and 335.

result of the injunction in *U.S. v Secretary*, the Court must determine whether Lawson's claim is moot. Second, assuming Lawson's claim is not moot, the Court must determine whether the FDOC is collaterally estopped from relitigating the question of whether RLUIPA compels the FDOC to provide kosher meals to prisoners.

In this regard the Court directed the Secretary to address each of these issues. ECF No. 342. The Secretary filed a Response, asserting that Lawson's Kosher food claim was not moot, and that because *U.S. v Secretary* is on appeal, it is not final for collateral estoppel purposes. ECF No. 345. The Court agrees that Lawson's Kosher food claim is not rendered moot because of the final judgment and permanent injunction in *U.S. v Secretary.* But the Secretary is incorrect that collateral estoppel does not apply because the case is on appeal. Rather, as explained below, even though *U.S. v Secretary* is on appeal the final judgment and permanent injunction collaterally estops the Secretary from relitigating the issue of whether the FDOC's failure to provide Kosher foods to inmates violates RUILPA.

The Court will first address the issue of whether Lawson's Kosher food claim is moot and then address whether the FDOC is collaterally estopped from relitigating the issue.

### 1.    *Lawson's Kosher food claim is not moot.*

While neither party has suggested that the claim is moot, this Court still has an obligation to examine whether it has the jurisdiction to decide the issue. *Sec'y, Florida Dep't of Corr.*, 778 F.3d at 1226 ("Although the parties did not raise any question about mootness, we have an obligation to notice and decide mootness issues."). Article III of

9

the Constitution extends judicial power to "cases" and "controversies." U.S. CONST. art. III, § 2. "The doctrine of mootness derives directly from the case-or-controversy limitation because 'an action that is moot cannot be characterized as an active case or controversy.'" *Al Najjar v. Ashcroft*, 273 F.3d 1330,1335 (11th Cir. 2001) (citing *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Ethredge v. Hall*, 996 F.2d 1173, 1175 (11th Cir. 1993).

"The doctrine of voluntary cessation provides an important exception to the general rule that a case is mooted by the end of the offending behavior." *Troiano v. Supervisor of Elections in Palm Beach Cty., Florida*, 382 F.3d 1276, 1282 (11th Cir. 2004). "Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave '(t)he defendant free to return to his old ways.'" *United States v. Concentrate Phosphate Export Ass'n.*, 393 U.S. 199, 203 (1968) (citing *United States v. W. T. Grant Co.*, 345 U.S. 629 (1953)). However, the concern is less warranted "when the defendant is not a private citizen but a government actor." *Troiano*, 382 F.3d at 1283. Therefore, in these cases, "there is a rebuttable presumption that the objectionable behavior will not recur." *Id.* However, "[e]ven so, a government cannot establish mootness just by promising to sin no more. A case is moot only when 'it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Watkins v. Jones*, No. 4:12-CV-215-RH/CAS, 2015 WL 5468648, at *1 (N.D. Fla. Sept. 15, 2015) (citing *Harrell v. The Florida Bar*, 608 F.3d 1241, 1266-67 (11th Cir. 2010)).

10

There are three important factors to look at when considering voluntary cessation by government actors. *Rich v. Sec'y, Florida Dep't of Corr.*, 716 F.3d 525, 531 (11th Cir. 2013). First, a court should consider whether the termination of the offending conduct was unambiguous. *Id.* "If a governmental entity decides in a clandestine or irregular manner to cease a challenged behavior, it can hardly be said that its "termination" of the behavior is unambiguous." *Harrell*, 608 F.3d at 1266-67. Furthermore, "the timing and content of the decision are also relevant in assessing whether the defendant's 'termination' of the challenged conduct is sufficiently 'unambiguous' to warrant application . . . in favor of government entities." *Id.* at 1267.

Similar to the situation in *Rich*, the FDOC in this case only began to provide Kosher meals in response to litigation that began to arise throughout the state. *See Rich* 716 F.3d at 532 (finding that "the timing of Florida's policy creates ambiguity" when made after the threat of litigation). It [cannot] be said that the fact that FDOC is currently providing Plaintiff with kosher meals indicates that it has terminated the behavior "in a regular manner."  Rather, the FDOC is providing Kosher meals because it has been directed to do so by the Court in *U.S. v Secretary*. The FDOC still maintains that it is not required to provide Kosher meals under RLUIPA and that it should be entitled to stop doing so if future budgetary concerns mandate that it do so.  In short, it cannot be said that the FDOC's "termination" of not providing kosher meals to qualified inmates is "unambiguous."

Second, a court should consider whether the change in policy or conduct appears to be the result of substantial deliberation or simply an attempt to manipulate

11

jurisdiction. *Rich*, 716 F.3d at 531. Timing plays a role in this assessing this factor. "As for timing, a defendant's cessation before receiving notice of a legal challenge weighs in favor of mootness, while cessation that occurs 'late in the game' will make a court 'more skeptical of voluntary changes that have been made." *Harrell v. The Florida Bar*, 608 F.3d 1241, 1267 (11th Cir. 2010) (internal citations omitted); *see Jager v. Douglas Cnty. Sch. Dist.*, 862 F.2d 824, 833-34 (11th Cir. 1989) (holding that a claim was not mooted when the actor's voluntary cessation was made after the threat of a lawsuit). The JDAP followed closely on the heels of a lawsuit filed in 2002. While the RDP was established in 2013, the FDOC did not notify the United States. Instead, the United States learned of the policy from counsel in separate ligation. *United States v. Sec'y, Florida Dep't. of Corr.*, No. 12-22958-CIV, 2013 WL 6697786, at *3 (S.D. Fla. Dec. 6, 2013) judgment vacated, appeal dismissed, 778 F.3d 1223 (11th Cir. 2015). These facts underscore that the change in policy may simply be an attempt to manipulate jurisdiction. *See Harrell*, 608 F.3d at 1267 (holding that voluntary cessation did not moot a claim where the government "acted in secrecy . . . failing to disclose any basis for its decision" which raised the possibility that the "the defendant changed course simply to deprive the court of jurisdiction" (internal quotation and citation omitted)).

The third factor a court should consider is whether the government has consistently applied a new policy or adhered to a new course of conduct. *Rich*, 716 F.3d at 531. In *Jews for Jesus*, 162 F.3d 627 (11th Cir. 1998), the Eleventh Circuit took into consideration the fact that the defendant had consistently applied a new policy for three years. Here, in contrast, the defendant has failed to apply a consistent policy.

12

Prior to 2004, no kosher meals were provided to prisoners. While meals were offered from 2004 until 2007, from 2007 until 2010, no kosher meals were provided. The FDOC did institute a pilot kosher program in 2010. However, it only took place in one reception center. The RDP, established in 2013, began at one facility and extended to others. There has been no consistency in how these programs have been applied. Even though the FDOC is providing kosher meals to Plaintiff since the entry of the permanent injunction in *U.S. v Secretary*, temporary compliance pending appeal, should not moot a case. *See Bell v. Woldish*, 441 U.S. 520, 542 n. 25 (1979) (noting that simply because the petitioners were able to comply with the order of the district court does not moot the case because the petitioners still dispute the court's order).

Accordingly, based upon an analysis of each of these factors, the Court concludes that Plaintiff's claim is not moot.

2. ***The FDOC is collaterally estopped by the final judgment and permanent injunction in U.S. v Secretary from relitigating the issue of whether its failure to provide Kosher meals to inmates violates RUILPA***.

Collateral estoppel bars re-litigation of an issue where "(1) the issue at stake is identical to the one involved in the earlier proceeding; (2) the issue was actually litigated in the earlier proceeding; (3) the determination of the issue . . . must have been a critical and necessary part of the earlier judgment, and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue." *Tampa Bay Water v. HDR Engineering, Inc.*, 731 F.3d 1171, 1180 (11th Cir. 2013). Furthermore, the issue must have been determined by a valid and final judgment

13

in the earlier proceeding. *Harris v. Washington*, 404 U.S. 55, 56 (1971). And contrary to the Secretary's argument the pendency of an appeal does not destroy the finality of a judgment for the purpose of applying the collateral estoppel doctrine. *Fidelity Stand. Life Ins. Co. v. first Nat'l Bank & Trust Co., Ga.*, 510 F.2d 272, 273 (5th Cir. 1975), *cert denied*, 423 U.S. 864 (1975); *see also* 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4433 (2d ed. 1981). Collateral estoppel may, of course, also be applied offensively. *See Parklane Hosiery Co. v. Shore*, 439, U.S. 322, 331 (1979) (extending the application of collateral estoppel offensively and noting that the elements are the same when applied offensively). A district court has broad discretion to determine when offensive collateral estoppel should be applied. *Id.* at 332.

    In this case there is no question that offensive collateral estoppel should be applied to bar re-litigation of the issue of whether Kosher diets must be provided to inmates, like Lawson, under the RLUIPA.  The issue of whether Kosher diets must be provided under the RLUIPA meets the four elements under the collateral estoppel doctrine. *See Tampa Bay*, 731 F.3d at 1180 (outlining the four elements required under the collateral estoppel doctrine).

    First, the issue at stake in the instant case is identical to the one involved in *U.S. v. Secretary*. *See id.* (the issue at stake must be identical to the one involved in the earlier proceeding). The predominant issue in this case is whether the FDOC is violating RUILPA by denying Lawson a Kosher diet. This mirrors the issue raised in *U.S. v. Secretary*. There the plaintiffs argued that "[b]y refusing to offer kosher meals, the Florida Department of Corrections ("FDC") forces hundreds of its prisoners to

14

violate their core religious beliefs on a daily basis, in violation of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 200cc ("RLUIPA")." *U.S. v. Secretary,* Compl*.,* ECF No. 1 ¶¶ 1, 46-48. As detailed above in *U.S. v. Secretary*, the court issued a final judgment and permanent injunction in favor of the plaintiff against FDOC, determining that "[j]udgment is entered in favor of Plaintiff and against Defendants on Plaintiff's claim challenging Defendants' denial of a kosher diet to sincere prisoners. The Court declares that Defendants' policy of denying a kosher diet to sincere prisoners violates RLUIPA." Final J. & Perm. Inj., ECF No. 548 ¶ 3. Indeed, the issue at stake in this case is identical to the issue in *U.S. v. Secretary*.

The Secretary's argument that the issue here is "a separate issue" from the one in *U.S. v. Secretary*, makes no sense. The Secretary says that *U.S. v. Secretary* "focuses on what must be provided to inmates statewide in an almost class-action type claim, and this case focuses on what must be provided to one individual inmate, no matter what the rest of the inmate population may be offered at any given time." (ECF No. 345.)  While *U.S. v. Secretary* may involve hundreds or thousands of inmates— who are being denied kosher diets in violation of the RLUIPA— that does not take away from the fact that the main issue—being denied a kosher diet in violation of the RLUIPA—is the same one that Plaintiff has presented in this case. *See Community State Bank v. Strong*, 651 F.3d 1241, 1263-64 (11th Cir. 2011) (the issue may have been litigated in the previous adjudication even if it arises in the context of a different cause of action).

Second, the issue of whether the FDOC violated RLUIPA by denying inmates a

kosher meal option was actually litigated in the earlier proceeding. *See Tampa Bay*, 731 F.3d at 1180 (the issue must have actually been litigated in the earlier proceeding); *Harris*, 404 U.S. at 56 (the issue must have been determined by a valid and final judgment in the earlier proceeding). "An issue is considered 'actually litigated' when the 'issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Community State Bank*, 651 F.3d at 1267-68 (citation omitted). There is little question that the issue was vigorously litigated by the FDOC and the FDOC lost when the court there entered a final judgment and permanent injunction on the matter. *See U.S. v. Secretary*, Final J. & Perm. Inj., ECF No. 548.

Moreover, it makes no difference for collateral estoppel purposes that the Secretary in *U.S. v Secretary* is appealing the final judgment. While Defendant argues that because *U.S. v. Secretary* is on appeal the final judgment is not "final" for collateral estoppel purposes, Defendant fails to point to any cases that support their contention.[3] Regardless, it is well established that the pendency of an appeal does not destroy the

---

[3] Defendant cites to *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 165 (1993), but it is unclear as to why Defendant has cited this case in support of their proposition. *Leatherman* presents the issue of "whether a federal court may apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure–in civil cases alleging municipal liability under Rev. Stat. § 1979, 42 U.S.C. § 1983." 507 U.S. at 164. The Court merely noted in an unnumbered footnote that the respondents in that case claimed that certain claims were barred by collateral estoppel and that petitioners responded that "the adverse ruling in this other litigation is currently on appeal and thus is not final for collateral estoppel purposes." *Id.* at 165. However, the Supreme Court of the United States declined to consider the issue because "the issue was neither addressed by the Fifth Circuit nor included in the questions presented." *Id.*

finality of a judgment for the purpose of applying the collateral estoppel doctrine. *See, e.g.*, *Fidelity Stand. Life Ins.,* 510 F.2d at 273.

Third, the determination of the issue as to whether the FDOC is required to provide a kosher meal option was a critical and necessary part of the final judgment and permanent injunction in *U.S. v Secretary  See Tampa Bay*, 731 F.3d at 1180 (the determination of the issue must have been a critical and necessary part of the earlier judgment). "Critical and necessary means 'the factual finding was essential to the ultimate decision in the prior case, and that the judgment could not have been entered without it.'" *In re* Trexler, 528 B.R. 842, 853 (Bankr. N.D. Ga. 2015) (quoting *In re* Green, 262 B.R. 557, 567 (Bankr. M.D. Fla. 2001)); *see also Irvin v. United States*, 335 F. App'x 821, 824 (11th Cir. 2009) ("In addition, it was "critical and necessary" to the resolution of that suit, since it meant that the district court was without jurisdiction and unable to proceed to the merits of the suit."). Undoubtably, the factual findings as to whether the denial of kosher meals violates the RLUIPA was essential to the ultimate decision in *U.S. v. Secretary* to impose a permanent injunction. *See U.S. v. Secretary*, Order on Mot. for Summ. J., ECF No. 498. In awarding the permanent injunction in *U.S. v. Secretary*, the court certainly considered whether the denial of kosher meals violated the RLUIPA, which is the same argument Plaintiff makes in this case. *See Vazuez v. Metropolitan Dade Cnty.*, 968 F.2d 1101, 1108-09 (11th Cir. 1992) (police's subsequent conduct in response to initial shots, which was in issue in § 1983 action, was not critical element of judgment in earlier case because jury in that case did not have to consider whether police response was excessive in order to find occupant culpably negligent).

Fourth, the FDOC had a full and fair opportunity to litigate this issue. *See Tampa Bay*, 731 F.3d at 1180 (the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue). The defendants in both the instant case and *U.S. v. Secretary* are the same— the Secretary of the FDOC. It is irrelevant that Plaintiff in this case was not a party in *U.S. v. Secretary*. *See United States v. Mendoza*, 464 U.S. 154, 158-59 (1984) ("[T]his Court in recent years has broadened the scope of the doctrine of collateral estoppel beyond its common law limits. . . . . It has done so by abandoning the requirement of mutuality of parties . . . and by conditionally approving the 'offensive use' of collateral estoppel by a non-party to a prior lawsuit."). Thus, there is little dispute that the Defendant in this case had the opportunity to litigate the issue in *U.S. v. Secretary*.

Accordingly, based upon application of the four factors of the collateral estoppel doctrine the Court concludes that the doctrine of collateral estoppel applies in this case. Based upon the final judgment and permanent injunction in *U.S. v. Secretary*, the Secretary is collaterally estopped in this case from re-litigation of the issue as to whether the FDOC's refusal to provide Kosher diets  to inmates with sincere beliefs violates RLUIPA.

### 3.  *Lawson is entitled to Kosher meals*

Plaintiff seeks to preliminarily and permanently require the FDOC to provide him with a certified kosher diet option.  ECF No. 285.  The FDOC, in its response to Plaintiff's preliminary injunction motion, argues that: (1) providing kosher meals poses a security risk to institutions; and (2) not offering a kosher diet to prisoners is the least

restrictive means of furthering its compelling interest in cost containment.  ECF No. 308.

While the FDOC insists that it is not obligated under RLUIPA to provide prisoners with a kosher diet, it has nonetheless consistently sought to provide kosher meals to prisoners since 2004.  The FDOC contends that it should retain the ability to eliminate the kosher food program during a fiscal crisis—an option that would be foreclosed if an injunction was granted.

### a.    Substantial Burden of Religious Exercise

Plaintiff contends that the FDOC's denial of kosher foods constitutes a substantial burden to his religious exercise protected by RLUIPA.  ECF No. 285. Denying kosher meals to a prisoner whose sincere religious beliefs require kosher meals works a substantial burden on that prisoner.  This issue was conceded by the Secretary in *U.S. v Secretary. See, also Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 793 (5th Cir. 2012).  As the FDOC does not challenge Lawson's assertion that the denial of kosher meals substantially burdens his religious exercise, the burden shifts to the Secretary to establish that the FDOC's policy is the least restrictive means of furthering a compelling government interest.  *See Holt*, 135 S.Ct. at 862; Doc. 308.

### b.    Compelling Governmental Interest

The FDOC contends that its denial of a kosher diet to prisoners furthers the compelling governmental interest in cost containment.  The FDOC claims to be a "cash-strapped" agency and argues that the cost of providing kosher meals would divert funds from satisfying other departmental obligations—like repairing a hypothetical failing

prison's kitchen and roof.  ECF No. 308 at 19-20.  The FDOC also maintains that

mandating kosher meals would hinder its ability to cut costs during a fiscal crisis. *Id.* at

19.  And while the FDOC  mentions several security concerns associated with the

installation of a system-wide kosher food program— it does not argue that security is a

compelling governmental interest furthered by its current kosher policy.

The FDOC has not satisfied its burden to prove that cost containment constitutes

a compelling governmental interest.  While jail and prison administrators are afforded

deference in governing their institutions, "policies grounded on mere speculation,

exaggerated fears, or post-hoc rationalizations will not suffice to meet the act's

requirements."  *Rich v. Sec'y, FDOC*, 716 F.3d 525, 533 (11th Cir. 2013) (quoting

*Lawson v. Singletary*, 85 F.3d 502, 509 (11th Cir. 1996)).

The FDOC has failed to supply facts sufficient to establish cost containment as a

compelling governmental interest in this case, just like if failed to do in two parallel

cases where it cited cost containment as a compelling interest.  Indeed, the Court in

*U.S. v. Sec'y, FDOC*, expressly rejected the Secretary's evidence that the FDOC's cost

containment constituted a compelling interest. Case No. 12-22958-CIV, 2015 WL

1977795, at *8 (S.D. Fla. Apr. 30, 2015) (noting that the FDOC's estimated worst-case

scenario would result in additional costs of only five one thousandths (0.005) of the

FDOC's total budget). This finding collaterally estopps the FDOC in this case from

relitigating the issue. The Eleventh Circuit also rejected a similar argument by the

FDOC in *Rich*, 716 F.3d at 533 (discussing the speculative nature of the FDOC's

estimates of the cost of a kosher program and finding that cost containment was not a

compelling governmental interest furthered by not providing kosher meals).

To the extent that security concerns could be considered a compelling government interest furthered by the FDOC's policy of refusing to provide kosher meals, they are not.  The testimony relied on by the FDOC to establish the legitimacy of its security fears fails to provide even one factual instance in which the provision of special meals undermined security.  Accordingly, the FDOC's speculative security concerns fall well short of meeting the compelling governmental interest standard required under RLUIPA.  See *Rich*, 716 F.3d at 533.

### c.      Least Restrictive Means

The Secretary also has failed to establish that denying prisoners kosher meals is the least restrictive means of furthering its interest in cost containment.  Though not controlling, the policies of other institutions are relevant and instructive to the consideration of whether "a particular restriction is the least restrictive means by which to further a shared interest."  *See Rich*, 716 F.3d at 534; *Spratt v. R.I. Dep't of Corr.*, 482 F.3d 33, 42 (1st Cir. 2007); *Warsoldier v. Woodford*, 418 F.3d 989, 999-1000 (9th Cir. 2005).  Similarly, the Supreme Court in *Holt*—in reference to a policy violating RLUIPA—stated: "when so many prisons offer an accommodation, a prison must, at a minimum, offer persuasive reasons why it believes that it must take a different course . . . ."  135 S.Ct. at 866.  Because the Federal Bureau of Prisons ("BOP") and at least 35 state departments of correction[4] engage in a policy that the FDOC objects to, the FDOC

---

[4]*United States v. Sec'y, FDOC*, Case No. 12-22958-CIV, 2013 WL 6697786, at *6 (S.D. Fla. Dec. 6, 2013) ("Institutions that currently provide a kosher diet to prisoners

is unlikely to satisfy RLUIPA's strict scrutiny inquiry "in the absence of any explanation by [the FDOC] of significant differences" between the FDOC and the BOP or other kosher-providing institutions that would render the policy unworkable.  *Spratt v. Rhode Island Dep't of Corr.*, (1st Cir. 2007).

The FDOC's consistent tinkering with kosher meal programs since 2004 directly refutes the contention that denying kosher meals is the least restrictive means of containing costs.  Further, the FDOC successfully administers therapeutic diet options for specific inmates without issue.  Accordingly, consistent with the conclusion of the court in *U.S. v Secretary* the Court finds that the FDOC's denial of a kosher diet option to prisoners violates RLUIPA.

### 4.    *Plaintiff is entitled to a preliminary injunction on his kosher diet claim.*

As discussed above, Plaintiff is likely to prevail on the merits of his claim that Defendant's denial of a kosher diet to prisoners violates RLUIPA.  A preliminary injunction is necessary to avoid irreparable harm.[5]  The restrictions placed on Plaintiff's

---

include the [BOP], the New York Department of Correctional Services, California Department of Corrections and Rehabilitation, Texas Department of Criminal Justice, and the Illinois Department of Corrections.").

[5] Granting or denying a preliminary injunction is a decision within the discretion of the district court.  *Carillon Importers, Ltd. v. Frank Pesce Intern. Grp. Ltd.,* 112 F.3d 1125, 1126 (11th Cir. 1997)*,* citing *United States v. Lambert,* 695 F.2d 536, 539 (11th Cir. 1983)*.*  Guiding this discretion is the required finding that plaintiff establish:
(1) a substantial likelihood of success on the merits;
(2) a substantial threat of irreparable injury if the injunction were not granted;
(3) that the threatened injury to the plaintiffs outweighs the harm an injunction may cause the defendant; and
(4) that granting the injunction would not disserve the public interest.

religious exercise will continue to cause irreparable harm without a preliminary

injunction.  *See Warsoldier*, 418 F.3d at 1001-02 ("For the same reasons the . . . policy

constitutes a substantial burden on [plaintiff's] religious practice, we conclude that

[plaintiff] faces the possibility of irreparable injury absent an injunction barring

enforcement of the . . . policy.").

Indent: The Court also takes into account the checkered history of the FDOC's provision

of Kosher meals to prisoners. This history of abrupt creation and cancellation of Kosher

programs evidences the need for judicial intervention to remedy the continued RLUIPA

deprivations.

Indent: Moreover, the threatened injury outweighs any harm to Defendant.  The slight

additional cost burden does not outweigh the irreparable injury being suffered by

Plaintiff.  Finally, granting the preliminary injunction does not disserve the public

interest, as the additional cost to the state would be slight relative to the burden being

removed.  *See Siegel,* 234 F.3d at 1176.

Indent: Accordingly, for these reasons, the Court concludes that Lawson is entitled to the

entry of a preliminary injunction mandating that the FDOC provide him with Kosher

meals in accordance with the guidelines and procedures mandated by the court in the

-------

*Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000)*; Carillon Importers, Ltd.,* 112 F.3d at 1126*; United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir. 1983)*.*  A preliminary injunction is an extraordinary and drastic remedy and should not be granted unless the movant "clearly carries the burden of persuasion" of all four prerequisites, which is always upon the plaintiff.  *Jefferson Cty.*, 720 F.2d at 1519, citing *Canal Auth. v. Callaway,* 489 F.2d 567 (5th Cir. 1974).

final judgment and permanent injunction entered in *U.S. v Secretary*.

**B.      Plaintiff's Claim Relating to a Sukkah**

Plaintiff seeks to enjoin the FDOC from preventing him from utilizing a "Sukkah booth" during the holiday of Sukkot.  ECF No. 291 at 2.  Plaintiff claims that he is compelled by his religion to "dwell, eat and recite prayers in a sukkah," and the FDOC's denial of his request to utilize a Sukkah booth is a violation of RLUIPA.  ECF No. 42 at 23-24.  The FDOC claims that Plaintiff's religious exercise is not substantially burdened by the denial of a Sukkah booth and, even if it was, the restriction is necessary to further the government's compelling interest in security.

Sukkot is a holiday observed by followers of Judaism.  The Sukkot holiday is a "Jewish harvest festival beginning on the fifteenth day of Tishri and commemorating the temporary shelters used by the Jews during their wandering in the wilderness."[6]  A sukkah booth is "a booth or shelter with a roof of branches and leaves that is used especially for meals during Sukkot[]."[7]  No work is permitted on the first or second day of Sukkot.[8]

---

[6]*Dictionary*, MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/sukkoth (last visited July 23, 2015).  The next Sukkot holiday will take place from September 27, 2015 until October 4, 2015. Chabad.org, http://www.chabad.org/holidays/jewishnewyear/template_cdo/aid/671894/jewish/When-is-Sukkot-in-2014-2015-2016-and-2017.htm (last visited Sept. 29, 2015).

[7]*Dictionary*, MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/sukkah (last visited Sept. 29, 2015).

[8]Tracey R. Rich, *Judaism 101*, http://www.jewfaq.org/holiday5.htm (last visited Sept. 29, 2015).

While typically made of natural materials, Plaintiff has specifically requested a "PopUp Sukkah" to alleviate security concerns.  ECF No. 291 at 11, 60-64.  Plaintiff claims that the PopUp Sukkah would be donated by the Aleph Institute.   *Id.* at 11.  Although an exhaustive list of materials is not contained in the record, the materials comprising the PopUp Sukkah— which are readily discernible from the record— are rods, bamboo sticks, buckle straps, elastic bands, and fabric. *Id.* at 60-64.

The FDOC insists that the PopUp Sukkah booth is an unacceptable alternative, as some of the materials could be used to make "dangerous weapons."  ECF No. 295 at 5.  Further, the FDOC asserts that, because the view into the Sukkah booth is partially obstructed, security staff would be needed to monitor prisoners using the booth. *Id.* at 5.

Plaintiff has carried his initial burden of establishing a substantial burden to his religious exercise by the FDOC's denial of his request to use a Sukkah booth.  Refusing a prisoner whose faith requires the use of a Sukkah booth constitutes a substantial burden to their religious exercise.  *See Van Wyhe v. Reisch*, 581 F.3d 639, 656 (8th Cir. 2009) ("[T]he succah is an expression of [plaintiff's] faith during this religious festival and this expression of his faith is significantly inhibited by the denial of his request to use the succah during the Festival of Sukkot.").  Rabbi Yaakov Luban avers in his expert report, filed by Plaintiff, that during "Succos one must eat in a Succah."  ECF No. 179-3 at 12.

Because Plaintiff satisfied his initial burden, the burden shifts to the Defendant to establish that refusing to allow Sukkah booths is the least restrictive means of furthering

a compelling government interest.  Administrative documents from the Colorado Department of Corrections (which were filed on the docket as exhibits to the Sullivan expert report) explicitly contemplate the use of Sukkah booths during Sukkot.  ECF No. 179-8 at 9.  Additionally, Plaintiff says that many prison systems allow prisoners to erect sweat lodges, which pose strikingly similar security risks as a PopUp Sukkah booth. ECF No. 291 at 12.  Defendant has failed to provide facts to show why it cannot accommodate prisoners' use of a Sukkah booth while other similarly situated institutions are able to do so. *See Rich*, 716 F.3d at 534.  Accordingly, the Court concludes that Defendant's policy of refusing to allow for Sukkah booths is in violation of RLUIPA.

The Court concludes, however, that even though refusing to allow for Sukkah booths as a general practice violates RLUIPA, Plaintiff is not entitled to a preliminary injunction on this claim because he has failed to establish that he actually has access to a PopUp Sukkah booth. Plaintiff only alleges that if the FDOC changes its policy and allows for Sukkah booths then the Aleph Institute will donate a PopUp Sukkah booth to the prisoners.  ECF No. 291 at 11.  However, on this record other than Plaintiff's self serving speculation that the Aleph Institute will provide one to Plaintiff, Plaintiff has not provided a reliable account or any evidence suggesting that the Aleph Institute has the ability and intention to donate a PopUp Sukkah booth.  Accordingly, in the absence of any evidence in the record that Plaintiff actually has the ability to obtain a PopUp Sukkah booth, the Court concludes that Plaintiff has failed to clearly establish a

26

substantial likelihood of success on the merits regarding this claim.  *See Jefferson Cty.*,

720 F.2d at 1519.[9]

**C.      Plaintiff has failed to establish a substantial likelihood of success on the merits regarding the remainder of his claims because the record discloses that Plaintiff failed to exhaust these claims.**

The Secretary asserts that Plaintiff's claims relating to the FDOC's restrictions

regarding Lawson's practice and participation in Shacharis, Mincha, Rosh Hashana,

Yom Kippur, Shemini Atzeret, and Simchat Torah were not properly exhausted.  ECF

No. 292.  According to the Secretary these claims were not exhausted until after the

filing of the initial complaint, but before the filing of the amended complaint.  ECF No.

292 at 1-2.  This Court previously found that these claims were exhausted by looking to

the date of the amended complaint as the deadline for when exhaustion must have

been accomplished.  ECF No.120 at 24-26.  Defendant argues that after the Court

addressed this issue the Eleventh Circuit issued a decision in another case expressly

confirming that exhaustion requires a prisoner to exhaust the claims before suit is filed

and that the failure to do so cannot be cured by filing grievances and exhausting after a

complaint has been filed.

It is well settled that under the Prison Litigation Reform Act (PLRA), inmates

must exhaust all available administrative remedies before proceeding in federal court.

_____

[9] Plaintiff, may of course, renew his request for preliminary injunction if he can submit sufficient reliable evidence that the Aleph Institute has the ability and intention to provide a PopUp Sukkah booth and arrangements have been made with the FDOC for delivery, inspection and safekeeping of the PopUp Sukkah booth.

42 U.S.C. § 1997e ("[N]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted."). The exhaustion provision is a mandatory precondition to bringing suit in federal court. *Jones v. Bock*, 549 U.S. 199, 211 (2002).

For the exhaustion requirement to be met under the PLRA, the prisoner must properly exhaust all available remedies *prior* to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). To properly exhaust all remedies, the prisoner must "take each step within the administrative process." *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024-25 (7th Cir. 2002)).

When a defendant raises the issue of failure to exhaust in the context of an inmate's 42 U.S.C. § 1983 action, it is treated as a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008). The court uses a two part procedure to determine whether a plaintiff has failed to exhaust his remedies. First, the court must review the defendants' factual allegations along with those contained in the plaintiff's response, construing conflicting facts in the light most favorable to the plaintiff. If, after reviewing these facts, the defendant is entitled to have the complaint dismissed, it will be dismissed. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). However, if the complaint is not subject to dismissal, the court must make findings of fact necessary to resolve the exhaustion issue. *Id.*

In *Smith v. Terry*, 491 F. App'x 81 (11th Cir. 2012) the Eleventh Circuit held that under the PLRA, a prisoner must have fully exhausted his administrative remedies at

28

the time his complaint is filed; exhausting after the fact and then filing an amended complaint does not cure an exhaustion defect. *Smith*, 491 F. App'x at 83 (holding that a supplemental complaint fails to cure an exhaustion defect); *Harris v. Garner*, 216 F.3d 970, 981 (11th Cir. 2000) ("No amendment or supplement to a pleading can change a historical fact . . . ."); *Fails v. Sec'y, FDOC*, Case No. 4:13cv456-RH/GRJ, 2014 WL 4092262, at *1 (N.D. Fla. Aug. 19, 2014) ("The law of the circuit is that belated exhaustion, followed by an amended complaint, does not cure the initial failure to exhaust."); *O'Connor v. Carnahan*, Case No. 3:09cv224-WS/EMT, 2014 WL 293457, at *4 (N.D. Fla. Jan. 27, 2014).

Accordingly, because there is no dispute on this record that Plaintiff did not exhaust his claims relating to Shacharis, Mincha, Rosh Hashana, Yom Kippur, Shemini Atzeret, and Simchat Torah until after suit was filed, Plaintiff does not have a substantial likelihood of success on the merits on these claims in view of the fact that these claims are due to be dismissed without prejudice as unexhausted. *See* 42 U.S.C. § 1997e; *Smith*, 491 F. App'x at 83. However, as Plaintiff alleges continual deprivation of religious liberties related to the unexhausted claims, dismissing these claims does not foreclose Plaintiff from filing a new complaint in a separate action raising the same claims.

## IV.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that:

1.  Plaintiff Ross Jay Lawson's Emergency Motion for Preliminary Injunction, ECF No. 291, should be **DENIED** and Plaintiff's claims relating to Shacharis, Mincha, Rosh Hashana, Yom Kippur, Shemini Atzeret, and Simchat Torah should be **DISMISSED without prejudice** for failing to exhaust administrative remedies before filing suit.

2.      Plaintiff Ross Jay Lawson's Emergency Motion for Preliminary Injunction, ECF No. 285, should be **GRANTED** and the Court should enter a preliminary injunction requiring the FDOC to provide Plaintiff with a Kosher diet.[10]

**IN CHAMBERS** at Gainesville, Florida this 30th day of September 2015.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

---

[10]  The preliminary injunction entered by the Court must ensure that the injunction complies with the mandates of the Prison Litigation Reform Act ("PLRA").  The PLRA requires that courts perform a need-narrowness analysis for prospective injunctive relief, and that:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.  The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).  The Eleventh Circuit has interpreted this provision to require "particularized findings that each requirement imposed by the preliminary injunction satisfies each of the need-narrowness-intrusiveness criteria."  *United States v. Sec'y, FDOC*, 778 F.3d 1223, 1228 (11th Cir. 2015); *Cason v. Seckinger*, 231 F.3d 777, 785 (11th Cir. 2000).