IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ROSS LAWSON,

      Plaintiff,

v.                                CASE NO. 4:04-cv-105-WTH-GRJ

DEP'T OF CORRECTIONS, et al.,

      Defendants.

_____/

## **REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff's Emergency Motion for

Preliminary Injunction ("First Motion for PI"),[1] Plaintiff's Emergency Motion

for Preliminary Injunction and Request for Expedited Relief ("Second

Motion for PI"),[2] Plaintiff's Emergency Motion for Preliminary Injunction

("Third Motion for PI"),[3] Defendants' Motion for Summary Judgment,[4] and

_____

[1] ECF No. 285.

[2] ECF No. 291.

[3] ECF No. 376.

[4] ECF No. 381.

Defendants' Renewed Motion for Summary Judgment.[5] The respective

parties have filed responses in opposition to each motion.[6] The motions

are therefore ripe for review. For the reasons discussed below it is

recommended that: (1) Plaintiff's First Motion for PI should be granted; (2)

Plaintiff's Second Motion for PI should be denied; (3) Plaintiff's Third

Motion for PI should be denied; (4) Defendants' Motion for Summary

Judgment should be granted in part and denied in part; and (5)

Defendants' Renewed Motion for Summary Judgment should be granted.

## I. BACKGROUND

This case spans more than thirteen years, two appeals, one

interlocutory appeal, and several judges. It has been pending so long that

other courts have addressed some of the same issues, and many of the

issues have become moot in light of policy changes. This is also not the

first time this Court has addressed (all but one of) the pending motions.

## A. Report and Recommendation Dated September 5, 2017

The Court issued a report and recommendation on September 5,

2017, recommending that Plaintiff's First Motion for PI should be granted,

---

[5] ECF No. 403.

[6] ECF Nos. 295, 308, 379, 389, 409.

Plaintiff's Second Motion for PI should be denied, Plaintiff's Third Motion

for PI should be denied, and Defendants' Motion for Summary Judgment

should be granted as to all remaining claims except for Plaintiff's grooming

policy claim.[7]

In reviewing the motion for summary judgment, the Court considered

a significant amount of evidence filed by both parties, including Plaintiff's

expert reports of Rabbi Yaakov Luban and Chaplain Gary H. Friedman.

Although Plaintiff also referenced purported expert testimony of George

Earl Sullivan and Gerald M. Gasko in his response to the motion for

summary judgment, those expert reports were not included in the record.

The Court therefore declined to consider the purported testimony from Mr.

Sullivan and Mr. Gasko.[8]

In moving for summary judgment on Plaintiff's grooming policy claim,

however, the FDOC failed to address Plaintiff's argument that the FDOC's

policy allowing female inmates to grow their hair to shoulder length or

longer suggests the feasibility of a religious exemption to the grooming

---

[7] ECF No. 392.

[8] *Id.* at 49 n.72.

policy.[9] The Court acknowledged, "[t]here is no question that other courts

have concluded—based on the evidence before them—that female

inmates are less likely to commit violent crimes, possess contraband, and

attempt escapes than male inmates and, therefore, pose less of a security

concern."[10] The Court could not make that finding in this case, however,

because the FDOC did not address Plaintiff's argument and—unlike the

other cases that have made that finding—did not submit any evidence

demonstrating the different security concerns between male and female

inmates.[11] The Court explained that "in the absence of any evidence

addressing the different grooming policies applicable to male and female

inmates the Court cannot conclude—on this record—that denying Plaintiff

a religious exemption from the FDOC's grooming policy while observing

Sifirah and sitting Onen is the least restrictive means necessary to achieve

its compelling goals of safety and security."[12] Thus, while the Court

recommended denying Defendants' motion for summary judgment

---

[9] *Id.* at 83.

[10] *Id.* at 84.

[11] *Id.* at 85–86.

[12] *Id.* at 86.

pertaining to Plaintiff's grooming claims, the Court noted that "[e]vidence accounting for the differences between the hair-length policies for male and female inmates would likely be more than sufficient to demonstrate that the FDOC's grooming policy does not violate RLUIPA."[13] Accordingly, the Court advised, "[i]n the event that such evidence exists Defendant may file an appropriate motion to renew its motion for summary judgment on this issue."[14]

Plaintiff then filed objections to the Court's report and recommendation arguing, in part, that the Court failed to take into consideration Mr. Sullivan and Mr. Gasko's expert reports when issuing its report and recommendation.[15] He attached the expert reports to his objections and represented—without opposition—that Mr. Sullivan and Mr. Gasko's expert reports were served on Defendants at some point during the span of this thirteen-year-old case.

Of course the Court did not consider Mr. Sullivan and Mr. Gasko's expert reports because those reports were never filed with the Court. But

---

[13] *Id.* at 86 n.80.

[14] *Id.*

[15] ECF No. 402.

because Plaintiff had attached the expert reports to his objections, in the interest of fairness and expediency, the Court vacated its prior report and recommendation so it could review the expert reports to determine what impact—if any—they had on the motion for summary judgment.[16]

The FDOC thereafter filed its renewed motion for summary judgment pertaining solely to Plaintiff's grooming claim,[17] along with a declaration from Jason Hoskins, Assistant Bureau Chief of Security of Operations for the FDOC, as evidence in support thereof.[18]

## B.    Mr. Sullivan and Mr. Gasko's Expert Reports

The FDOC argues that the Court should give no weight to Mr. Sullivan and Mr. Gasko's expert reports because they are out of date and provide opinions on several facts of legal matters which are not in effect anymore, thereby making the reports irrelevant to the FDOC's current policies.[19]

Mr. Sullivan's expert report was executed on January 17, 2007, more

---

[16] ECF No. 408.

[17] ECF No. 403.

[18] Mr. Hoskins made his declaration under penalty of perjury. ECF No. 403-1; *see* 28 U.S.C. § 1746.

[19] ECF No. 403.

than eleven years ago. (ECF No. 402 at 74–93 ("Sullivan Rep.").)[20] By 2009, according to Plaintiff's own admission Mr. Sullivan could not continue his duties as an expert witness in this case due to medical issues. Plaintiff therefore obtained a supplemental expert report from Mr. Gasko, which was executed on April 28, 2009—more than eight years ago. (*Id.* at 55–60 ("Gasko Rep.").)[21] While these expert reports are undoubtedly out-of-date on several issues, being out-of-date alone does not constitute reason to exclude the opinions. Instead, to the extent either Mr. Sullivan or Mr. Gasko offers opinions pertaining to an FDOC policy that has since changed, the issue of timeliness goes to weight rather than admissibility of the opinion.

Mr. Gasko's supplemental expert report, however, presents a separate problem. Mr. Gasko's report is less than five pages in length. In the report Mr. Gasko says he is "personally familiar with the facts stated in [Mr. Sullivan's] expert report, and . . . could and would testify to them in a court of law if called upon to do so." (*Id.* ¶ 2.) Mr. Gasko has "significant expertise in the same area of corrections as does Mr. Sullivan . . . ." (*Id.* ¶

---

[20] Mr. Sullivan's expert report was made under penalty of perjury. *See* § 1746.

[21] Mr. Gasko's expert report was made under penalty of perjury. *See* § 1746.

4.) He "thoroughly reviewed Mr. Sullivan's expert report as well as his basis for arriving at his conclusions and findings." (*Id.*) In addition, Mr. Gasko knows Mr. Sullivan and is "personally familiar" with Mr. Sullivan's views, which are very similar to his own. (*Id.*) Mr. Gasko has also spoken with Mr. Sullivan by telephone to ascertain for himself Mr. Sullivan's "basis for arriving at the conclusions that he reached, his reasons therefore and to ascertain the nature of the materials he relied upon to reach his conclusions." (*Id.*) Finally, Mr. Gasko discussed Mr. Sullivan's report thoroughly with Mr. Sullivan. (*Id.*) Accordingly, Mr. Gasko says he is:

> able to adopt Mr. Sullivan's report in haec verba as if it were my own expert report. Inasmauch as I totally agree with [Mr. Sullivan's] findings and conclusions, I am prepared to testify . . . as plaintiff's expert in connection with the expert report which I have adopted and now submit as my own report.

(*Id.* ¶ 6.) Pursuant to Fed. R. Civ. P. 26(a)(2)(b)(I), Mr. Gasko represents that "a complete statement of [his] opinion as well as the basis and reasons for them are fully set forth in Mr. Sullivan's report which [he] is adopting as [his] own." (*Id.* ¶ 7.) In accordance with Fed. R. Civ. P. 26(a)(2)(b)(ii), Mr. Gasko says he is "relying upon the same data or other information considered by Mr. Sullivan that he relied upon in formulating his expert report as well as the [Jewish Dietary Accommodations] Study

Group Report and Recommendations which was published [on July 26,

2007] after the Sullivan expert report was written." (*Id.*)

Mr. Gasko's expert report falls woefully short of meeting the

requirements under Fed. R. Civ. P. 26(a)(2)(B),[22] and Fed. R. Evid. 702.[23]

Although an expert may rely on the opinion of another expert, the expert

may not simply repeat or adopt the findings of other experts without

investigating them and attempting to assess the validity of the opinion. *In

re Polypropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348 (N.D. Ga.

---

[22] Under Fed. R. Civ. P. 26(a)(2)(B), an expert report must contain:

(i) a complete statement of all opinions the witness will express and the
basis and reasons for them;
(ii) the facts or data considered by the witness in forming them;
(iii) any exhibits that will be used to summarize or support them;
(iv) the witness's qualifications, including a list of all publications authored
in the previous 10 years;
(v) a list of all other cases in which, during the previous 4 years, the
witness testified as an expert at trial or by deposition; and
(vi) a statement of the compensation to be paid for the study and
testimony in the case.

[23] A witness may testify as an expert in a case under Fed. R. Evid. 702 if:

(a) the expert's scientific, technical, or other specialized knowledge will
help the trier of fact to understand the evidence or to determine a fact in
issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts
of the case.

2000) (citing *In re TMI Litig.*, 193 F.3d 613, 715–16 (3d Cir. 1999) (finding

blind reliance by expert on other expert opinions demonstrates flawed

methodology under *Daubert*); *TK–7 Corp. v. Estate of Barbouti*, 993 F.2d

722, 732–33 (10th Cir. 1993) (excluding expert opinion relying on another

expert's report because witness failed to demonstrate a basis for

concluding report was reliable and showed no familiarity with methods and

reasons underlying the hearsay report)).

Mr. Gasko's vague assertion that he has "significant expertise in the

same area of corrections" as Mr. Sullivan, and that he and Mr. Sullivan

share very similar views fails to demonstrate familiarity with the reasons

underlying Mr. Sullivan's report is not sufficient. Mr. Gasko does nothing

but adopt Mr. Sullivan's expert report. Notably, Mr. Gasko fails even to

parrot the actual opinions in his own report. The Court therefore declines to

consider Mr. Gasko's expert testimony in ruling on the motion for summary

judgment and renewed motion for summary judgment.[24]

## II.  DISCUSSION

Upon review of Mr. Sullivan's expert report, the Court fully adopts its

---

[24] Even if the Court considered Mr. Gasko's testimony, however, the Court's ultimate findings would not change because Mr. Gasko would purportedly offer the exact same testimony as Mr. Sullivan.

report and recommendation dated September 5, 2017,[25] as if fully set forth

herein. For the reasons explained in the September 5, 2017, report and

recommendation: (1) Plaintiff's First Motion for PI[26] should be granted. A

preliminary injunction should be entered ordering Defendants to provide

Plaintiff with Kosher meals consistent with the injunction entered in United

States v. Secretary, Fla. Dep't of Corr., No. 1:12-cv-22958-PAS, 2015 WL

1977795 (S.D. Fla. Aug. 12, 2015). A finding must be included in the

injunction that the injunction meets the neednarrowness requirements of

the PLRA because it is narrowly drawn, extends no further than necessary

to correct the RLUIPA violation, and is the least intrusive means necessary

to correct the RLUIPA violation; (2) Plaintiff's Second Motion for PI[27] should

be denied and Plaintiff's claims relating to Shacharis, Mincha, Rosh

Hashana, Yom Kippur, Shemini Atzeret, and Simchat Torah should be

dismissed without prejudice for failing to exhaust administrative remedies

before filing suit; and (3) Plaintiff's Third Motion for PI[28] should be denied

---

[25] ECF No. 392.

[26] ECF No. 285.

[27] ECF No. 291.

[28] ECF No. 376.

as moot.[29]

## A.   Motion for Summary Judgment

Turning to the motion for summary judgment,[30] the Court finds that Mr. Sullivan's testimony has relevance only to Plaintiff's Havdalah and grooming claims.[31] Nevertheless, Mr. Sullivan's testimony does not alter the ultimate conclusion. Accordingly, for the same reasons discussed in the Court's report and recommendation dated September 5, 2017, the FDOC's motion for summary judgment should be granted as to Plaintiff's claims concerning a Kosher diet, Sukkah booth, Havdalah, request for a nondenominational room, and request for consultation with an Orthodox rabbi, and denied without prejudice as to Plaintiff's grooming claims.

---

[29] ECF No. 392.

[30] ECF No. 381.

[31] Although Mr. Sullivan's expert report discusses Sukkah booths and Kosher meals, it does not create a genuine issue of material fact on those claims because it attests to policies in place more than eleven years ago. As the Court explained in its report and recommendation dated September 5, 2017, the FDOC's Sukkah booth and Kosher meals policies have gone through very material and substantial changes since 2007. With respect to Kosher meals, the Court's determination in the prior report and recommendation is based on res judicata in light of the injunction entered in *United States v. Secretary* in 2015. An expert report from seven years prior to that injunction has nothing to do with the Kosher meals policy in place today. Mr. Sullivan's proffered testimony pertaining to Kosher meals therefore does not create a genuine issue of material fact and does not change the Court's recommendation on that issue.

### 1.    *Havdalah*

Mr. Sullivan claims to be an "expert in the management and operations of correctional facilities/detention facilities and jails." (Sullivan Rep. at 75.) He has toured and audited 178 adult correctional facilities throughout his career. (*Id.* at 76.) Mr. Sullivan says that Orthodox Judaism practice requirements are approved in other states with which he is familiar, as well as the BOP, and that the practice requirements do not present "inordinate security concerns." (*Id.* at 88–89.)

Mr. Sullivan's proposed testimony is remarkably limited and only tangentially relevant to Plaintiff's Havdalah claim. Specifically, other states with which he is familiar and the BOP provide and permit "religious prayer times and materials required by Orthodox Judaism, e.g. . . . candles; . . . etc., and food items required for prayer observances . . . ." (*Id.* at 89.) He also says that in other states and the BOP "[g]rape juice and/or wine are provided for religious services when administered under the supervision of Chaplains, Clergy contractors, or Clergy volunteers. . . . . Many religious food items are permitted to be brought into the institutions for special festivities and Holy Day celebrations." (*Id.*)

Mr. Sullivan opines that the "FDOC could fully implement and provide

for Orthodox Judaism religious practices without an inordinate risk to institution security or good order. (*Id.* at 91.) He says the "accommodations requested by Plaintiff Lawson do not, in any way, in my [o]pinion, present any legitimate security concerns." (*Id.*) Mr. Sullivan further opines that "[i]f the FDOC believes that any restrictions at all are required in response to Plaintiff Lawson's requests, the ones that I currently read about are clearly not the 'least restrictive.'" (*Id.* at 91–92.) In his opinion, "[t]here are a great many ways to meet the security questions of the FDOC without imposing the restrictions now imposed . . . ." (*Id.* at 92.)

What is conspicuously absent from Mr. Sullivan's expert report, however, is any opinion pertaining to religious materials and religious observance in administrative confinement—which is the primary basis of Plaintiff's Havdalah claim. Mr. Sullivan's opinion that the accommodations Plaintiff requests do not present any legitimate security concerns and that the FDOC's restrictions are not the least restrictive is nothing more than an *ipse dixit* assessment. *See Gen. Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that

there is simply too great an analytical gap between the data and the opinion proffered."); *see McDowell v. Brown*, 392 F.3d 1283, 1301–02 (11th Cir. 2004) ("[A]n expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions . . . .").

Mr. Sullivan's testimony does not demonstrate that other states or the BOP permit inmates in administrative confinement to leave their confinement cells to attend congregational services in the chapel or elsewhere. Nor does Mr. Sullivan's testimony demonstrate that other states or the BOP permit inmates in administrative confinement to possess or utilize candles, spices, and wine for religious practices. He has offered no basis for his *ipse dixit* assessment concluding that Plaintiff's requested accommodations pertaining to Havdalah in administrative confinement do not present any legitimate security concerns and that the FDOC's restrictions on Plaintiff's observance of Havdalah in administrative confinement are not the least restrictive means necessary to achieve their compelling interest in safety and security.

Finally, to the extent Plaintiff argues that at Sumter CI—where Plaintiff was housed over thirteen years ago between 2003 and

2005—Havdalah services for inmates in *general population* were held

without the necessary candles, wine, and spices, Mr. Sullivan's testimony

does not create an issue of material fact. Mr. Sullivan's testimony is silent

on whether the other states or the BOP permit spices for religious services.

Mr. Sullivan also does not attest that other states or the BOP permit

inmates to have three and a half ounces of wine (equal to approximately a

glass of wine) for religious services as opposed to the significantly smaller

amount of wine typically used as sacramental wine and administered by a

priest or minister. Mr. Sullivan's testimony therefore does not show that the

vast majority of other states and the BOP permit the specific requested

accommodations that Plaintiff requests.

Even if the vast majority of other jurisdictions do allow the particular

religious exemptions pertaining to Havdalah in general population, RLUIPA

does not require a prison to grant a particular religious exemption merely

because other jurisdictions have done so. *Holt v. Hobbs*, 135 S. Ct. 853,

866 (2015). As the Court explained in its report and recommendation dated

September 5, 2017, the FDOC has offered persuasive reasons why it

believes it must prohibit inmates from utilizing candles, spices, and three

and a half ounce of wine to observe Havdalah. *See id.* (requiring a prison

to offer persuasive reasons why it believes that it must take a different course when so many prisons offer the requested accommodation).

In sum, Mr. Sullivan's testimony does not alter the Court's prior conclusion that the FDOC's policies do not substantially burden Plaintiff's exercise of the Jewish religion pertaining to Havdalah. Nor does Mr. Sullivan's testimony alter the Court's conclusion that the undisputed evidence demonstrates the FDOC's policies (1) prohibiting inmates from attending chapel services while in confinement, and (2) prohibiting candles, wine, and spices are the least restrictive means of furthering the FDOC's compelling interest in maintaining safety and security within the prison. For the reasons set forth in the Court's report and recommendation dated September 5, 2017, the FDOC is therefore entitled to summary judgment on Plaintiff's Havdalah claims.

### 2. *Grooming*

The Court's prior report and recommendation recommended that the FDOC's motion for summary judgment should be denied without prejudice as to Plaintiff's grooming claim. The FDOC's renewed motion for summary judgment now further addresses Plaintiff's grooming policy claim.[32] The

---

[32] ECF No. 403.

Court maintains its prior conclusion that the motion for summary judgment should be denied without prejudice as to Plaintiff's grooming claim so that the claim can be properly addressed on the FDOC's renewed motion for summary judgment.

## B.    Renewed Motion for Summary Judgment

Upon review of the FDOC's renewed motion for summary, Mr. Hoskins' declaration, and Mr. Sullivan's expert report, the Court concludes that the FDOC's renewed motion for summary judgment—which pertains solely to Plaintiff's grooming claim—should be granted for the reasons set forth in the Court's report and recommendation dated September 5, 2017, as well as the following reasons.

As an initial matter, Plaintiff argues in his response to the renewed motion for summary judgment that Mr. Hoskins' declaration should be stricken or, alternatively, Plaintiff should be granted leave to conduct further discovery and to have his experts supplement their reports based on Mr. Hoskins' declaration.[33] Plaintiff's request is denied for at least three reasons.

First, contrary to Plaintiff's assertion, Mr. Hoskins declaration is not

---

[33] ECF No. 409.

offered as an expert opinion and the FDOC therefore had no obligation to provide Mr. Hoskins' declaration to Plaintiff prior to filing the renewed motion for summary judgment.

Second, to the extent Plaintiff claims the FDOC violated Fed. R. Civ. P. 26(a) and Fed. R. Civ. P. 26(e) by failing to supplement its initial disclosures to identify Mr. Hoskins as a witness, the FDOC was not required to supplement its disclosures because Plaintiff is—and has been since 2008—proceeding in this matter as a *pro se* incarcerated litigant. *See* Fed. R. Civ. P. 26(a)(1)(B)(iv).

Third, to the extent Plaintiff requests leave to conduct further discovery and have his experts supplement their reports based on Mr. Hoskins' declaration, no further discovery or leave of court is required for Plaintiff to have his experts update their reports. Plaintiff was free to have his experts supplement their reports. Indeed, Plaintiff admits that he provided Mr. Hoskins' declaration to his experts so that they could supplement their reports. The supplemented reports, however are nothing more than speculation at this point. Plaintiff provides nothing to suggest that these experts are willing or able to serve as experts at this point so many years after they provided their original reports. This case has been

pending since 2004 and needs to come to a conclusion. This case should not be a rolling repository for Plaintiff to assert a continuing litany of new RLUIPA complaints he may have challenging the FDOC's policies or actions. Notably, because so much time has passed many policies have changed. To the extent Plaintiff wishes to challenge the current policies he must first resolve this case. No further time will be provided for Plaintiff to conduct additional discovery or to obtain supplemented expert reports.

The Court recommended denying without prejudice the FDOC's motion for summary judgment with respect to Plaintiff's grooming claim because the FDOC submitted no evidence establishing the reason for treating male and female inmates differently pertaining to grooming. The FDOC has now submitted evidence from Mr. Hoskins establishing two compelling reasons supporting the FDOC's policy of treating female inmates differently from male inmates with respect to grooming.

First, according to the FDOC. male inmates are more likely to commit violent crimes, possess contraband, and attempt escapes than female inmates within the FDOC. (ECF No. 403-1, ¶ 4 ("Hoskins Dec.").) The FDOC has  determined that "male inmates must be treated with much more stringent restrictions than female inmates." (*Id.*)

Second, male and female inmates have different psychological needs. (*Id.* ¶ 5.) Female inmates are therefore treated differently in an attempt to preserve their femininity, surely a consideration which impacts their conduct as prisoners. (*Id.*)

Plaintiff argues in his response that denying him a religious exemption to the grooming policy is not the least restrictive means because female inmates more dangerous than him are allowed to grow their hair. Plaintiff's statement is serve-serving, speculative and is not based upon any admissible evidence in the record. Thus, even though the FDOC has different grooming policies for male and female inmates, that difference does not give rise to a material dispute of fact sufficient to preclude summary judgment on Plaintiff's grooming claim. *See Knight v. Thompson*, 797 F.3d 934, 947 (11th Cir. 2015) (former director of prisons' testimony that men pose greater safety and security risks than women in prisons presented a valid reason for the different treatment regarding hair-length policies); *Fegans v. Norris*, 537 F.3d 897, 905 (8th Cir. 2008) (district court correctly held that differing hair regulations for male and female inmates did not undermine contention that hair-length regulation for males was the least restrictive means available to satisfy security concerns

because unrebutted expert testimony demonstrated the different security risks between male and female facilities).

Finally, Mr. Sullivan's expert report does not alter the Court's conclusion that denying Plaintiff a religious exemption from the grooming policy is the least restrictive means necessary to achieve its compelling interests. Mr. Sullivan says "all States with which [he] is familiar and the U.S. BOP permit inmates length of hair, beards, mustaches, and personal grooming at their choice, as long as such are maintained clean and within acceptable standards of appearance." (Sullivan Rep. at 88.)

Mr. Sullivan's report does not create an issue of material fact for two reasons. First, Mr. Sullivan's opinion is based entirely on his assertion that other prison systems allow inmates to maintain different lengths of hair provided it is maintained clean and within acceptable standards of appearance. In contrast in this case Plaintiff wants the FDOC to permit him to have unfettered hair growth for 49 days while observing Sifirah Omer and for up to 11 months while sitting Onen. Allowing unfettered hair growth for up to 11 months is not the same as requiring hair to be "maintained clean and within acceptable standards of appearance." *See Knight v. Thompson*, 796 F.3d 1289, 1293 (11th Cir. 2015) (evidence demonstrating

that other prison systems permit inmates to grow one-half inch beards

failed to demonstrate that those prison systems would allow plaintiff's

specific requested accommodation—long, unshorn hair).

Second, even assuming other prisons allow inmates to maintain their

hair at whatever length they desire or otherwise offer religious

accommodations, as discussed in the Court's prior report and

recommendation, the FDOC has presented more than a conclusory and

speculative assertion that unfettered hair growth presents a legitimate

security concern. *See Holt*, 135 S. Ct. at 866 (prison must present more

than "mere say-so" that it cannot accommodate prisoner's requested

grooming accommodation for security reasons)*; Knight*, 796 F.3d at 1293

(prison presented sufficient evidence establishing that it could not

accommodate prisoner's requested grooming accommodation for security,

discipline, and hygiene reasons). Accordingly, Plaintiff has failed to present

evidence sufficient to show that the FDOC can satisfy its security and

safety concerns in its grooming policy through a less-restrictive means

than denying Plaintiff a religious exemption from the grooming policy.

While Mr. Sullivan vaguely concludes with no supporting facts or

basis that the accommodations Plaintiff requests do not present any

legitimate security concerns and that the FDOC's restrictions are not the least restrictive, this opinion is nothing more than an *ipse dixit* assessment. Mr. Sullivan's opinions do not demonstrate that other states or the BOP permit inmates unfettered hair growth for up to eleven months or permit the type of hair growth Plaintiff suggests will be necessary for him to observe the tenets of the Jewish faith.

The record evidence, on the other hand, demonstrates that denying Plaintiff a religious exemption from the FDOC's grooming policy while observing Sifirah and sitting Onen is the least restrictive means necessary to achieve the FDOC's compelling goals of safety and security in the prison. The FDOC's renewed motion for summary judgment, therefore, should be granted.

## VI.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

1.    Plaintiff's Motion for Preliminary Injunction, ECF No. 285, should be **GRANTED**. A preliminary injunction should be entered ordering Defendants to provide Plaintiff with Kosher meals consistent with the injunction entered in *United States v. Secretary, Fla. Dep't of Corr.*, No. 1:12-cv-22958-PAS, 2015 WL 1977795 (S.D. Fla. Aug. 12, 2015). A finding should be included in the injunction that the injunction meets the need-narrowness requirements of the PLRA because it is narrowly drawn, extends no further than necessary to correct the

RLUIPA violation, and is the least intrusive means necessary to correct the RLUIPA violation.

2.  Plaintiff's Motion for Preliminary Injunction, ECF No. 291, should be **DENIED** and Plaintiff's claims relating to Shacharis, Mincha, Rosh Hashana, Yom Kippur, Shemini Atzeret, and Simchat Torah should be **DISMISSED** without prejudice for failing to exhaust administrative remedies before filing suit.

3.  Plaintiff's Motion for Preliminary Injunction, ECF No. 376, should be **DENIED** as moot**.**

4.  Defendants' Motion for Summary Judgment, ECF No. 381, should be **GRANTED** as to Plaintiff's claims concerning a Kosher diet, Sukkah booth, Havdalah, request for a non-denominational room, and request for consultation with an Orthodox rabbi, and **DENIED without prejudice** as to Plaintiff's grooming claims.

5.  Defendants' Renewed Motion for Summary Judgment, ECF No. 403, should be **GRANTED**.

 **IN CHAMBERS** at Gainesville, Florida, this 16th day of February 2018.


    *s/Gary R. Jones*
    GARY R. JONES
    United States Magistrate Judge


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections**

**shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**